941 P.2d 314

**Donald SAMMIS and Fernanda Sammis, husband and wife, Plaintiffs–Appellants,**

**v.**

**MAGNETEK, INC., a foreign corporation, and one of its divisions, MagneTek Sensory Electric; Gould Incorporated, a foreign corporation; Cadet Manufacturing Company, a foreign corporation; Idaho Power Company, an Idaho corporation; and Pink's Electric, Inc., an Idaho corporation, Defendants–Respondents.**

**and**

**GTE Corp., a foreign corporation and two of its divisions, Sylvania Manufacturing and Control Devices; North American Philips Corp., a foreign corporation, and one of its subsidiaries, divisions or its parent corporation; Advance Trans-**

**former Corp., a foreign corporation; National Service Industries, a foreign corporation and one of its divisions, Lithonia Lighting; Selco Products Co., a foreign corporation; and Desco Sensors & Switches, Inc., a foreign corporation, Defendants.**

**No. 22318.**

Supreme Court of Idaho,
Boise, March 1997 Term.

June 5, 1997.

Rehearing Denied Aug. 18, 1997.

Cosho, Humphrey, Greener & Welsh, P.A., Boise, for appellants. Richard H. Greener argued.

Cantrill, Skinner, Sullivan & King, Boise, for respondents MagneTek, Inc., MagneTek Sensory Electric, and Gould Electronics, Inc. Frank P. Kotyk argued.

James J. Davis law offices, Boise, for respondent Cadet Manufacturing Co.. Thomas E. Dvorak argued.

Ringert, Clark, Chtd., Boise, for respondent Idaho Power. Allyn L. Sweeney argued.

Law Office of Brian D. Harper, Twin Falls, for respondent Pink's. Brian D. Harper argued.

TROUT, Chief Justice.

This is an appeal from a district court order dismissing all claims against defendants-respondents in a products liability action.

## I.

### BACKGROUND AND PROCEDURAL HISTORY

On March 19, 1992, the Sun Valley home of plaintiffs Donald and Fernanda Sammis (the Sammises) was destroyed by fire. On March 18, 1993, the Sammises and their insurance company, Fire Insurance Exchange, filed suit against a variety of defendants, including MagneTek, Inc., (MagneTek) alleging that a defect in the light fixtures and ballasts installed in their home caused the fire. On June 2, 1993, the Sammises filed a substitution of counsel indicating that they would be appearing pro se. On March 5, 1994, the Sammises' expert, Dr. Ordean Anderson, met with MagneTek's expert, Walter Powell, to

conduct tests. Both experts concluded that the light fixtures and ballasts did not cause the fire, and Dr. Anderson believed that an electric "toe," or "kick," heater was the fire's source.

On March 18, 1994, the Sammises filed an amended complaint, adding many of the defendants who are respondents in this appeal: MagneTek Sensory Electric[1] (Sensory) (a division of Magnetek); Gould Electronics, Inc. (Gould) (manufacturer of electric fan motors of the type found in toe heaters); Cadet Manufacturing, Inc. (Cadet) (manufacturer of toe heaters); Idaho Power Company (IPC) (utility company that made repairs to cables under the Sammises' driveway to correct purported power surges and blow-outs); and Pink's Electric, Inc. (Pink's) (electrical contractor that installed the heater). In August 1994, Fire Insurance Exchange withdrew, leaving only the Sammises as plaintiffs.

On February 17, 1995, MagneTek and Sensory filed a motion for summary judgment, arguing that: (1) the unrebutted affidavit of MagneTek's expert, Walter Powell, established that the light fixtures and ballasts manufactured by MagneTek did not cause the fire in the Sammises' home, and (2) the Sammises had failed to establish that Magne-Tek or Sensory were involved in the design, manufacture, or sale of any product that caused or contributed to the fire. The court granted summary judgment for MagneTek and Sensory on June 21, 1995. The Sammises appeal this ruling.

On March 8, 1995, the Sammises filed ex parte a motion for enlargement of time in which to serve Gould and Cadet. The court, finding good cause for the Sammises' failure to timely serve these defendants, granted this motion. The Sammises served Cadet with the amended complaint on March 14, 1995, and served Gould on March 27, 1995. Both Gould and Cadet filed motions to dismiss for insufficiency of process and insufficiency of service of process. The court granted these motions by order dated June 21, 1995. The Sammises appeal these rulings.

Although the Sammises did not name IPC in their motion for enlargement of time, the Sammises did not serve IPC with the amended complaint until March 17, 1995. On March 22, IPC served the Sammises with a request for admissions, to which the Sammises did not respond within the required time frame. In response, IPC moved for summary judgment based upon facts deemed admitted due to this failure to respond, a motion to dismiss for insufficiency of process and insufficiency of service of process, and a motion for sanctions pursuant to I.R.C.P. 11. On May 30, 1995, the Sammises filed a motion to withdraw the deemed admissions and leave to file new admissions. The court denied the Sammises' motion and granted IPC's motion to dismiss and motion for summary judgment by order dated June 21, 1995. The court also granted IPC's request for attorney's fees and costs on August 21, 1995. The Sammises appeal these rulings.

Although Pink's was not named in the Sammises' March 8 motion for enlargement of time, the Sammises did not serve Pink's with the amended complaint until March 6, 1995. Pink's filed a motion to dismiss for insufficiency of process and insufficiency of service of process on April 10, 1995. The court granted the motion by order dated June 21, 1995. The Sammises appeal this ruling.

The Sammises and all of the respondents also seek costs and attorney's fees on appeal.

## II.

### MOTIONS TO DISMISS OF GOULD, CADET, IPC, AND PINK'S

The Sammises named Gould and Cadet in their motion for enlargement of time. The court viewed Gould and Cadet's motions to dismiss as motions for reconsideration of the court's previous order granting the Sammises' motion for enlargement of time. The

---

1. It appears that the correct name of this party is MagneTek *Century* Electric. The Sammises, however, apparently filed a motion during the proceedings below to change the name to Mag-neTek *Sensory* Electric. Counsel for MagneTek Century/Sensory Electric stipulated to this change in name. For purposes of this appeal, this respondent shall be referred to as MagneTek Sensory Electric.

court ruled that the Sammises had failed to demonstrate good cause for an extension of time in which to serve Gould and Cadet and granted Gould and Cadet's motions to dismiss.

Although the Sammises did not name IPC or Pink's in their motion for enlargement of time, the Sammises failed to timely serve these respondents. IPC and Pink's also based their motions to dismiss on I.R.C.P. 4(a)(2) and 12(b). The court granted these motions, again finding that the Sammises had failed to demonstrate good cause.

## A. Reconsideration of order allowing late service

■ Because the court initially granted the Sammises' ex parte motion for enlargement of time, the first issue to be decided is whether a district court can reconsider and vacate an interlocutory order, such as an order allowing late service of named defendants. This Court has held that I.R.C.P. 11(a)(2)(B) provides the authority for a district court to reconsider and vacate interlocutory orders so long as final judgment has not yet been entered. *Farmers Nat'l Bank v. Shirey*, 126 Idaho 63, 68, 878 P.2d 762, 767 (1994). *See* I.R.C.P. 11(a)(2)(B). In this case, then, the district court's reconsideration of its prior ruling was proper.

## B. Standard of review

■ The version of I.R.C.P. 4(a)(2) in effect at the time the amended complaint was filed provides:

> If a service of the summons and complaint is not made upon a defendant within six (6) months after the filing of the complaint and the party on whose behalf such service was required cannot show *good cause* why such service was not made within that period, the action *shall* be dismissed as to that defendant without prejudice upon the court's own initiative without notice to such party or upon motion.

I.R.C.P. 4(a)(2) (1994) (emphasis added). Although we have not previously articulated the standard of review applicable to cases involving this rule, it is clear that the determination of whether good cause exists is a factual one. *See Shaw v. Martin*, 20 Idaho 168, 174–75, 117 P. 853, 855 (1911) (issue of whether plaintiff exercised reasonable diligence in serving summons upon defendant is a factual one). Because this is a factual determination, the appropriate standard of review is the same as that used to review an order granting summary judgment. *See Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 74–75, 803 P.2d 978, 980–81 (1990) (applying summary judgment standard to factual questions presented by conflicting affidavits in motion to dismiss for lack of personal jurisdiction). Thus, when reviewing the trial court's decision that the Sammises failed to establish good cause under the rule, we must liberally construe the record in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor. *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 485, 887 P.2d 29, 30 (1994) (citing *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 272, 869 P.2d 1365, 1367 (1994); *Harris v. Department of Health and Welfare*, 123 Idaho 295, 298, 847 P.2d 1156, 1159 (1992)).

## C. Good cause

Rule 4(a)(2) required the court to dismiss the action unless the Sammises demonstrated good cause for failure to timely serve the respondents. The relevant period of time on which to focus is the six months following the filing of the amended complaint—March 18 through September 18, 1994. By its terms, Rule 4(a)(2) imposes the burden of demonstrating good cause on the party who failed to effect timely service—in this case, the Sammises.

### 1. Pro se status

■ The Sammises argue that greater leniency from the court is required due to the fact that they participated in this litigation pro se until March 3, 1995. This Court has held, however, that pro se litigants are not accorded any special consideration on that ground. *Golay v. Loomis*, 118 Idaho 387, 392, 797 P.2d 95, 100 (1990). Pro se status does not excuse parties from adhering to procedural rules, even though they may be unaware of such requirements. *Id.*, 797 P.2d at 100; *Golden Condor, Inc. v. Bell*, 112

Idaho 1086, 1089 n. 5, 739 P.2d 385, 388 n. 5 (1987); *Scafco Boise, Inc. v. Rigby*, 98 Idaho 432, 434, 566 P.2d 381, 383 (1977). In *Scafco*, the pro se appellant, in filing a motion for a new trial, violated a mandatory procedural rule requiring that he set forth with particularity the factual grounds for his motion. The opposing party sought to strike appellant's motion on that basis. This Court ruled that the trial court erred in not striking appellant's motion, noting that the language of the rule was mandatory and that, "the law provides that a man may try his own case if he wants to do so. [Appellant] has chosen to do so, and having so chosen, I suppose he should not complain if he finds himself in difficulty." *Scafco*, 98 Idaho at 434, 566 P.2d at 383 (quoting trial court's order). Likewise, in the instant case, the lower court considered the mandatory nature of the procedural rules, stating prior to granting the respondents' motions to dismiss, "There are rules, and, particularly, 'shall' rules I think have to be complied with, and courts themselves are places where rules are followed." Rule 4(a)(2) is couched in mandatory language, requiring dismissal where a party does not comply, absent a showing of good cause. We hold that the Sammises' pro se status cannot excuse their lack of compliance with this mandatory rule.

In their briefing before this Court, the Sammises argue that we should consider "good cause" in Rule 4(a)(2) as synonymous with "excusable neglect." Even if this were the applicable standard, we have held that ignorance of procedural requirements goes beyond excusable neglect: "[A pro se litigant's f]ailure to be aware of the requirements of procedural rules does not constitute excusable neglect." *Golay*, 118 Idaho at 392, 797 P.2d at 100 (quoting lower court when discussing excusable neglect for purposes of I.R.C.P. 60(b)(1)). Thus, even under this more relaxed standard, the Sammises' pro se status does not excuse their failure to comply with the time limitations in Rule 4(a)(2).

## 2. Time barred if dismissed

■ The Sammises also argue that Rule 4(a)(2) provides for dismissal without prejudice where a plaintiff fails to timely serve defendants. They point out that if we affirm the district court's order dismissing these respondents, refiling of their claim will be time barred. This, they urge, should be considered in the assessment of good cause and should weigh in their favor. The Sammises, however, cite no authority for this proposition. Although Idaho courts have not addressed this issue, the federal courts have ruled that, under the analogous federal rule, the running of the statute of limitations and the consequent bar to refiling the action is *not* a factor to be taken into account when determining whether good cause exists. *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1306 & n. 7 (3d Cir.1995); *Mendez v. Elliot*, 45 F.3d 75, 78 (4th Cir.1995); *Floyd v. United States*, 900 F.2d 1045, 1048 (7th Cir. 1990) (citations omitted). We hold that the running of the statute of limitations and the subsequent time-bar to refiling the action is not a factor to be considered in determining whether good cause exists under Rule 4(a)(2).

## 3. Diligent attempts to effect service

■ The Sammises next assert that they diligently attempted to serve the respondents in this case. In Mr. Sammis' affidavit, he states, "I have made a diligent and good faith effort in pursuing the claims in this case and the following demonstrates what I have done and what has occurred in this case." The majority of the affidavit, however, is irrelevant as to why the Sammises failed to timely serve the defendants, as the events which Mr. Sammis describes occurred outside the relevant time frame, either before the filing of the amended complaint or after the six-month period had expired. He also did not elaborate on what steps he took to locate the respondents and to ascertain how he could serve them. Although the Sammises are correct in asserting that a court may consider a party's diligent efforts to effect service, the Sammises did not meet their burden of establishing good cause given the dearth of specific information regarding attempts at service.

## 4. Difficulty in determining identity of defendants

The Sammises also cite the difficulty in determining the proper defendants in com-

plex products liability actions. This factor, however, is irrelevant to a good cause determination in the instant case. The relevant time period to consider is March 18 through September 18, 1994. The four respondents at issue (Gould, Cadet, IPC, and Pink's) were named in the Sammises' amended complaint. This is not a case, then, where the defendants' identities were not discovered until after the six-month period had expired. Their identities were known on March 18, 1994, at the start of the relevant time frame. The complexity of a products liability action thus cannot account for or excuse the Sammises' untimely service of these respondents.

### 5. Settlement negotiations

The Sammises also argue that their ongoing attempts to settle the suit against Cadet should be considered in the good cause analysis. In his affidavit, Mr. Sammis asserts that, beginning in October 1994, he and Cadet discussed the possibility of settlement. Even if negotiations were a proper factor to consider in a determination of good cause, the attempts at settlement in this case occurred after the expiration of the six-month period (September 18, 1994). They are thus irrelevant as to whether the Sammises had good cause for failure to timely serve Cadet.

### 6. Prejudice to defendants

The Sammises appear to argue that Rule 4(a)(2) imposes a burden on defendants to show prejudice stemming from the late service and that a court cannot dismiss a case pursuant to this rule absent such a showing. The Sammises also assert that lack of prejudice to the defendants should be a consideration in the good cause analysis. By its terms, however, Rule 4(a)(2) imposes the burden of preventing dismissal for violation of the rule upon the party who failed to effect timely service—here, the Sammises. In addition, the rule's language renders a consideration of prejudice to the defendants irrelevant to good cause determinations. The rule required the Sammises to show "good cause *why* such service was not made" within the stated time frame. I.R.C.P.

2. Although IPC also moved for summary judgment and the court granted this motion, we need

4(a)(2) (1994) (emphasis added). As a federal court noted when interpreting identical language in the analogous federal rule, lack of prejudice to the defendant does not constitute a reason *why* service could not be made. *Floyd*, 900 F.2d at 1048. Federal courts have also held that a lack of prejudice to defendants, by itself, cannot constitute good cause. *See, e.g., MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir.1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 64, 136 L.Ed.2d 25 (1996); *Floyd*, 900 F.2d at 1048–49. Because the Sammises have not proffered a legitimate reason for the late service and thus have not demonstrated good cause (as discussed above), the respondents' lack of a showing of prejudice is irrelevant. The purported absence of prejudice does not support the Sammises' allegation of good cause.

### D. Conclusion

We affirm the district court's dismissal of the Sammises' complaint as to respondents Gould, Cadet, IPC, and Pink's pursuant to I.R.C.P. 4(a)(2). We hold that the Sammises did not meet their burden of demonstrating good cause for failure to timely serve these respondents.

### III.

### MOTIONS FOR SUMMARY JUDGMENT OF MAGNETEK AND SENSORY [2]

MagneTek and Sensory moved for summary judgment on the ground that the Sammises had not established that they had any involvement in the design, manufacture, or sale of any product that caused or contributed to the fire. The district court granted these motions, noting only: "No showing of material facts that are in dispute, no proof definite enough brought forth to resist the motions for summary judgment."

### A. Standard of review

I.R.C.P. 56(c) governs motions for summary judgment. It provides in part:

not address this issue, as we have affirmed the lower court's ruling on IPC's motion to dismiss.

The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . .

When reviewing a lower court's ruling on a motion for summary judgment, this Court must liberally construe the record in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor. *Friel,* 126 Idaho at 485, 887 P.2d at 30 (citing *Farm Credit Bank of Spokane,* 125 Idaho at 272, 869 P.2d at 1367; *Harris,* 123 Idaho at 298, 847 P.2d at 1159). The motion should be granted only if the evidence reveals no disputed issues of material fact and reasonable people would draw the same inferences from the evidence. *Id.,* 887 P.2d at 30.

### B. Light fixtures

■ All of the allegations in the amended complaint which involve MagneTek concern its participation in the design, manufacture, and/or sale of ballasts allegedly incorporated into fluorescent light fixtures installed in the Sammises' home. MagneTek argues that the Sammises produced no admissible evidence that the lighting fixtures caused or contributed to the fire. In support of its motion for summary judgment, MagneTek submitted to the court the affidavit of Walter Powell, a technical expert retained to investigate the role of the lighting fixtures in causing the fire. Upon testing and examination of the ballasts, he concluded that the light fixtures had played no role in the fire. He stated:

> [B]ased upon the testing and examination done of all of the ballasts in the light fixtures, in my opinion, there can be no basis for arriving at the conclusion that any of the ballasts contributed to igniting the fire in this case.

No other component in the light fixtures caused the fire in this case. Simply put, the light fixture and the component parts thereof were victims of the fire and had nothing to do with the cause of the fire at the Sammis residence on March 19, 1992.

The Sammises did not provide any admissible evidence to rebut this conclusion. In fact, the Sammises submitted the affidavit of James Willmore, an electrical engineer retained by them "to investigate the toe heater that caused the fire." He stated that he had examined the fan motors and thermostat of a toe heater in the Sammises' home and concluded, "It is my professional opinion that the said toe heater was the cause of the fire that destroyed the Plaintiffs' home." This affidavit does not rebut Powell's opinion that the light fixtures did not cause the fire and, indeed, appears to confirm that fact. No genuine issue of material fact thus exists with regard to the light fixtures' role in the fire at the Sammises' home; both MagneTek and the Sammises agreed that the light fixtures and their components did not cause or contribute to the fire. We thus hold that the lower court did not err in granting summary judgment for MagneTek, insofar as the claims based upon the ballasts and light fixtures.

### C. Electric heater

In their motion for summary judgment, MagneTek and Sensory also asserted that the Sammises did not produce any admissible evidence regarding MagneTek and Sensory's alleged roles in the design, sale, or manufacture of the toe heater or its components that allegedly caused the fire. Rule 56(e) requires that, if the moving party submits affidavits or other evidence in support of its motion, the "adverse party may not rest upon the mere allegations or denials of that party's pleadings, but the party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." In addition, the rule requires that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." I.R.C.P. 56(e). Before applying the liberal construction and reasonable inferences rules required when considering a motion for summary judgment, we must first analyze the threshold question of admissibility under Rule 56(e). *Rhodehouse v. Stutts,* 125 Idaho 208, 211, 868 P.2d

**350**

1224, 1227 (1994) (citing *Hecla Mining Co. v. Star–Morning Mining Co.*, 122 Idaho 778, 784, 839 P.2d 1192, 1198 (1992)).

Because MagneTek and Sensory submitted Powell's affidavit and the Sammises' responses to interrogatories in support of their motion for summary judgment, the Sammises could not simply refer to the allegations made in their pleadings to resist the motion. *Corbridge v. Clark Equip. Co.*, 112 Idaho 85, 87, 730 P.2d 1005, 1007 (1986) (quoting *Snake River Equip. Co. v. Christensen*, 107 Idaho 541, 549, 691 P.2d 787, 795 (Ct.App.1984)). *See also* I.R.C.P. 56(e). Rule 56(e) required the Sammises to set forth specific facts demonstrating that a genuine issue of material fact exists regarding MagneTek and Sensory's involvement in the design, manufacture, or sale of the toe heater or its components. In the amended complaint, the Sammises linked MagneTek and Sensory to the manufacture of the fan motor used in the toe heater by alleging that Gould, the actual manufacturer of the motor, sold its electric motor division to Sensory, a division of MagneTek.

To support these allegations, the Sammises submitted the affidavit of James Willmore. Willmore explained that an examination of the fan motors revealed that they were manufactured by Gould. To connect MagneTek and Sensory with Gould, Willmore stated:

> 6. On February 27, 1995, I called the Defendant Gould, Inc. to inquire about their motor division. I was informed that the Defendant Gould had at one time owned Century Electric of St. Louis, Missouri, which was their motor division. The Defendant Gould was sold to Nippon Mining. Subsequently, Nippon Mining sold the Century Electric operation to the Defendant MagneTek. I telephoned Defendant MagneTek in St. Louis to determine if I could find out if they still make the type of motor that was in the above-described heater. In addition, I was informed that the Defendant MagneTek makes motors at several locations and does not use the Century trade-mark any longer, however, Defendant MagneTek is in the business of making motors. . . .

> 7. Upon further investigation, I have learned that the Defendant MagneTek Century Electric is a subsidiary of the Defendant MagneTek that manufactures the above-described fan motors.

At the hearing on the motion for summary judgment, counsel for MagneTek and Sensory moved to strike these paragraphs on the ground that they are inadmissible hearsay and thus violate Rule 56(e). This case is thus distinguishable from *Clarke v. Prenger*, 114 Idaho 766, 760 P.2d 1182 (1988), discussed in *Rhodehouse v. Stutts*, 125 Idaho 208, 868 P.2d 1224 (1994), where neither the attorneys nor the district judge mentioned Rule 56(e)'s requirements. *Rhodehouse*, 125 Idaho at 213, 868 P.2d at 1229. Under those circumstances, we had to assume that the lower court considered all of the materials before it, including affidavits that may or may not have complied with Rule 56(e). *Id.*, 868 P.2d at 1229. It would have been inappropriate for us to consider the sufficiency of the affidavits where that issue was never raised before the lower court. *Id.*, 868 P.2d at 1229. In contrast, in the instant case, although the district court did not specifically rule on MagneTek and Sensory's motion to strike paragraphs 6 and 7 of the Willmore affidavit under Rule 56(e), the motion to strike was sufficient to raise the issue before the trial court. We must thus determine whether the Willmore affidavit meets the admissibility requirement of Rule 56(e). *Oats v. Nissan Motor Corp. in the U.S.A.*, 126 Idaho 162, 166, 879 P.2d 1095, 1099 (1994) (analyzing affidavit submitted in opposition to summary judgment motion, finding it flawed under Rule 56(e), and affirming district court's grant of summary judgment).

An examination of the Willmore affidavit establishes that it does not comply with Rule 56(e). The statements made in paragraphs 6 and 7 would not be admissible at trial as they constitute hearsay. *See, e.g., State v. Shama Resources Ltd. Partnership*, 127 Idaho 267, 271, 899 P.2d 977, 981 (1995). *See also* I.R.E. 801, 802. Although these statements would constitute admissions by a party-opponent (Gould) and thus not hearsay if offered against that party, these statements are not admissions when offered against a party-opponent who did not make

the statements (here, MagneTek and Sensory). Though apparently conceding that paragraphs 6 and 7 are hearsay and thus inadmissible at trial, the Sammises argue that an expert may rely on potentially inadmissible evidence in rendering an opinion, citing I.R.E. 703 and *Doty v. Bishara*, 123 Idaho 329, 848 P.2d 387 (1992). While this is true, it does not apply to the instant case. Willmore is an electrical engineer, retained as a technical expert by the Sammises to investigate the cause of the fire. He stated in his affidavit that he believed that a malfunction in the heater caused the fire. As an electrical engineer, he was qualified to render such an opinion. In forming this opinion, however, he did not rely on the statements made in paragraphs 6 and 7 regarding the alleged corporate transfers of the motor division that manufactured a component of the heater. In addition, he was not qualified as an expert in business mergers, corporate transactions, or corporate structures; he thus cannot render an opinion on these subjects. *See Marty v. State*, 122 Idaho 766, 769, 838 P.2d 1384, 1387 (1992) (trial court did not abuse its discretion by striking affidavit where affiant was not an expert in hydrology and thus not qualified to render an opinion as to the anticipated frequency of flooding). We therefore hold that Willmore's affidavit does not suffice under Rule 56(e) to raise a genuine issue of fact linking MagneTek and Sensory to Gould, the manufacturer of the fan motor.

The Sammises did not produce any admissible evidence to support their allegations that Sensory, a division of MagneTek, purchased the electric motor division from Gould, the manufacturer of the fan motor found in the heater. The Sammises thus did not raise any genuine issues of material fact as to MagneTek and Sensory. We affirm the district court's order granting MagneTek and Sensory's motions for summary judgment.

## IV.

### THE SAMMISES' MOTION TO WITHDRAW THE DEEMED ADMISSIONS

In response to IPC's motion for summary judgment, the Sammises moved to withdraw the deemed admissions and sought leave to file new admissions. The court denied this request, stating: "So far as plaintiffs' motion to file new admissions under 36(b), court will deny that motion, that there's no good cause shown."

Although we have not yet addressed the standard applicable when reviewing a lower court's ruling on a motion brought under I.R.C.P. 36(b), federal courts have held that, under the analogous federal rule, such decisions are reviewed for an abuse of discretion. *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir.1995); *999 v. C.I.T. Corp.*, 776 F.2d 866, 869 (9th Cir.1985). In addition, they have warned lower courts to use caution when exercising their discretion to allow withdrawal or amendment of admissions under this rule. *C.I.T. Corp.*, 776 F.2d at 869 (citations omitted).

We hold that the correct standard of review to apply to lower court's rulings on motions made under I.R.C.P. 36(b) is the abuse of discretion standard. Rule 36(b) provides, in relevant part:

> Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.... [T]he court *may* permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining an action or defense on the merits....

(emphasis added). By its terms, this rule vests the court with discretion in determining whether to allow withdrawal or amendment of admissions. The test for determining whether a court has abused its discretion consists of three inquiries: (1) whether the court correctly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the court reached its decision through an exercise of reason. *Burgess v. Salmon River Canal Co., Ltd.*, 127 Idaho 565, 573, 903 P.2d 730, 738 (1995) (citing

*Rhodehouse,* 125 Idaho at 213, 868 P.2d at 1229).

The rule, however, does not require the court to allow withdrawal or amendment. Rather, it *permits* the court to do so where two requirements are met: (1) the merits of the action will be subserved by allowing withdrawal or amendment, and (2) the opposing party does not demonstrate that withdrawal or amendment will prejudice that party. *See Donovan v. Carls Drug Co., Inc.,* 703 F.2d 650, 652 (2d Cir.1983) ("Because the language of the Rule is permissive, the court is not required to make an exception to Rule 36 even if both the merits and prejudice issues cut in favor of the party seeking exception to the rule."). *But see Hadley,* 45 F.3d at 1348 (finding abuse of discretion where trial court denied motion to withdraw deemed admissions where opposing party did not demonstrate prejudice).

In this case, we hold that the lower court abused its discretion in ruling on the Sammises' motion. Although the court correctly perceived the issue as one of discretion, it did not act consistently with the legal standards applicable to the specific choices available to it. In ruling on the Sammises' motion, the court stated that it based its decision on the fact that the Sammises had failed to establish "good cause." The "good cause" language, while relevant to a determination of whether to dismiss a claim for violation of Rule 4(a)(2), does not appear in Rule 36(b). In addition, the court made no mention of the two-prong test delineated in Rule 36(b). Where a lower court, in the exercise of its discretion, does not apply the correct legal test or consider the factors laid out in an applicable rule or statute, the court has abused that discretion. *See Gutting v. Falstaff Brewing Corp.,* 710 F.2d 1309, 1314

(8th Cir.1983) (holding that district court abused its discretion in denying motion under F.R.C.P. 36(b) because it did not apply two-prong test set forth in rule and instead based its decision on: party's failure to request extension of time within which to respond; "pattern of delay" exhibited by party; and party's "apparent propensity to 'flout' the time limits" set forth in federal rules—considerations not discussed in rule). *See also Hanf v. Syringa Realty, Inc.,* 120 Idaho 364, 369, 816 P.2d 320, 325 (1991); *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.,* 119 Idaho 87, 95–96, 803 P.2d 993, 1001–02 (1991) (both holding that trial court abused its discretion when imposing sanctions under I.R.C.P. 11 because it applied incorrect legal test).

The lower court did not apply the correct legal test under Rule 36(b). We thus vacate the court's order denying the motion and remand for a determination of whether the Sammises met the test set forth in Rule 36(b).

## V.

## IPC'S MOTION FOR SANCTIONS

IPC filed a motion for sanctions against the Sammises pursuant to I.R.C.P. 11(a)(1).[3] IPC based its motion for sanctions on the matters deemed admitted by the Sammises' failure to timely respond to IPC's request for admissions. The court granted IPC's request for sanctions and awarded attorney's fees incurred in moving for summary judgment. Because we have held that the district court abused its discretion in denying the Sammises' motion to withdraw the deemed admissions and have remanded that decision, we must also vacate the award of

---

3. Rule 11(a)(1) requires that every pleading, motion, or other paper of a party be signed and provides:

> The signature of an attorney or party constitutes a certificate that the attorney or party has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any im-

proper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

sanctions and remand for a determination following the court's ruling on the Sammises' motion.

## VI.

## COSTS AND ATTORNEY'S FEES

### A. The Sammises

The Sammises seek attorney's fees and costs on appeal pursuant to I.A.R. 40 and 41 and I.C. §§ 12–120(3) and –121. These authorities provide for the award of costs and fees to the "prevailing party." With respect to MagneTek, Sensory, Gould, Cadet, and Pink's, the Sammises are not the prevailing party on appeal. In addition, with regard to IPC, neither the Sammises nor IPC can be said to have prevailed.[4] The Sammises are thus not entitled to an award of attorney's fees or costs against respondents.

### B. MagneTek and Sensory

■ MagneTek and Sensory seek costs and attorney's fees on appeal pursuant to I.A.R. 40 and 41, I.C. § 12–121, and *Blaser v. Cameron*, 121 Idaho 1012, 829 P.2d 1361 (Ct.App.1991). As MagneTek and Sensory prevailed on the summary judgment issue on appeal, we award costs on appeal pursuant to I.A.R. 40. We decline, however, to award attorney's fees under I.C. § 12–121. Such an award is proper "only where the Court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Thompson v. Pike*, 125 Idaho 897, 901, 876 P.2d 595, 599 (1994) (citing *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979)). *See also* I.R.C.P. 54(e)(1). Although the Sammises' argument before this Court urging error in the grant of summary judgment as to these respondents was not persuasive, it was not unreasonable or frivolous.

### C. Gould

Gould seeks costs and attorney's fees on appeal pursuant to I.A.R. 40 and 41, I.C.

§ 12–121, and *Blaser*, 121 Idaho 1012, 829 P.2d 1361. As Gould prevailed on appeal on the issue of its motion to dismiss, we award costs on appeal pursuant to I.A.R. 40. We decline, however, to award attorney's fees under I.C. § 12–121 because the Sammises' position on appeal was not unreasonable or frivolous. *See Thompson*, 125 Idaho at 901, 876 P.2d at 599 (citing *Minich*, 99 Idaho at 918, 591 P.2d at 1085). *See also* I.R.C.P. 54(e)(1).

### D. Cadet

Cadet seeks costs and attorney's fees on appeal pursuant to I.A.R. 40 and 41, and I.C. §§ 12–120 and –121. As Cadet prevailed on appeal on the issue of its motion to dismiss, we award costs on appeal pursuant to I.A.R. 40. We decline, however, to award attorney's fees under I.C. § 12–121 because the Sammises' position on appeal was not unreasonable or frivolous. *See Thompson*, 125 Idaho at 901, 876 P.2d at 599 (citing *Minich*, 99 Idaho at 918, 591 P.2d at 1085). *See also* I.R.C.P. 54(e)(1).

■ Although Cadet does not specify upon which subsection of I.C. § 12–120 it relies, § 12–120(3) appears to be the only provision which could potentially apply to the instant case. That subsection states:

In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

The term "commercial transaction" is defined to mean all transactions except transactions for personal or household purposes. The term "party" is defined to mean any person, partnership, corporation, association, private organization, the state of Idaho or political subdivision thereof.

---

4. Although we affirmed the district court's grant of IPC's motion to dismiss, we vacated the court's denial of the Sammises' motion to withdraw the deemed admissions and the award of sanctions to IPC.

We have held that attorney's fees are not warranted under this statute whenever a commercial transaction is remotely connected with the case. *Kelly v. Silverwood Estates,* 127 Idaho 624, 631, 903 P.2d 1321, 1328 (1995). Instead, an award of fees is only appropriate where the commercial transaction comprises the gravamen of the suit, where "the commercial transaction is integral to the claim and constitutes the basis upon which the party is attempting to recover." *Id.,* 903 P.2d at 1328 (citation omitted). Although the Sammises' based their claims against Cadet on two contractual theories (breach of express and implied warranties), the main thrust of their suit clearly sounded in tort, and the other two claims brought against Cadet (negligence and strict liability) reflect this focus. We therefore decline to award fees to Cadet under this statute.

### E. IPC

IPC seeks costs and attorney's fees pursuant to I.A.R. 40 and 41, and I.C. §§ 12–120 and –121. Because these authorities provide for the award of costs and fees to the "prevailing party," and because neither IPC nor the Sammises have predominantly prevailed on appeal in relation to each other, we decline to award costs or fees to IPC.

### F. Pink's

Pink's seeks an award of attorney's fees under I.R.C.P. 54(e). Rule 54(e)(1) provides for the award of attorney's fees to a prevailing party "when provided for by any statute or contract." Although Pink's does not indicate upon which statute it relies in its request for attorney's fees, it states in its brief that an award under Rule 54(e) is warranted where the opposing party advances their position "frivolously, unreasonably or without foundation." This language suggests that Pink's seeks fees under I.C. § 12–121. We decline, however, to award attorney's fees under § 12–121 because the Sammises' position on appeal was not unreasonable or frivolous. *See Thompson,* 125 Idaho at 901, 876 P.2d at 599 (citing *Minich,* 99 Idaho at 918, 591 P.2d at 1085). *See also* I.R.C.P. 54(e)(1).

## VII.

## CONCLUSION

We hold that the Sammises did not demonstrate good cause for failure to timely serve Gould, Cadet, IPC, and Pink's, and we thus affirm the district court's dismissal of the Sammises' claims against these respondents pursuant to I.R.C.P. 4(a)(2). We also affirm the order of summary judgment entered in favor of MagneTek and Sensory because the Sammises did not produce admissible evidence sufficient to raise any genuine issue of material fact as to these respondents. We vacate the district court's denial of the Sammises' motion to withdraw the deemed admissions and the award of sanctions to IPC and remand for a determination of whether the Sammises met the requirements of I.R.C.P. 36(b). Finally, we award costs, but not attorney's fees, to MagneTek, Sensory, Gould, Cadet, and Pink's.

JOHNSON, McDEVITT, SILAK and SCHROEDER, JJ., concur.